Good morning, Your Honors. My name is Ben Coleman. I represent Appellant Chi. I would like to start with the issue of whether the money laundering statute applies to generic federal bribery. It's our position that a long line of Supreme Court precedent, the plain language of the statute, legislative history, and policy considerations all demonstrate that when the statute says an offense against a foreign nation involving bribery of a public official, when the statute uses the word offense involving, that is generic federal bribery. And the court can look at, starting with Nardello, Supreme Court case, Perrin, and Shidler. Those are three Supreme Court cases. And then this court's recent decision in Franklin, which we 20-H'ed back a month or two ago. That is the analysis that both the Supreme Court and this court have repeatedly taken. And it makes sense that when a defendant is in a federal court, that generally a generic federal offense will underlie the money laundering. So in this case, the district court refused to adopt that interpretation. And for that reason alone, a reversal is required because the government conceded that the indictment did not allege generic federal bribery as the underlying activity. They conceded that in their response papers to the motion to dismiss that was wrong under Supreme Court precedent. And so for that reason alone, we believe that the court should reverse and order the district court to dismiss the indictment. If the court didn't agree with the indictment challenge, it's still our position that the jury instructions were flawed because they did not set forth bribery under the generic federal definition. In particular, the instructions were defective under McDonnell, which is the recent Supreme Court case, which explains the official act requirement or element of the federal bribery offense. The instruction that was given used similar language to the instruction that was held to be defective in McDonnell. It used language that was held to be defective by the Second Circuit in Silver, which followed McDonnell. So again, for that reason alone, there was instructional error. And in a case like this, where the jury deadlocked on five of the six counts, and based on McDonnell itself, which says that this type of error cannot be harmless, the government hasn't met its burden of showing harmlessness beyond a reasonable doubt. So for that reason also, the court should reverse for harmful instructional error. Counsel, could we just walk through the statute of conviction? So the statute of conviction was 18 U.S. Code section 1957. Correct. And so in there, the charge was that money was derived from specified unlawful activity. Correct. And so to get the definition of specified unlawful activity, do we go to 18 U.S. Code section 1956? Correct. So what in that statute do you think requires us to include the generic definition of bribery? Okay, so the relevant definition in 1956 is an offense against a foreign nation involving bribery of a public official. That's the language. And what the Supreme Court and this court have said is that that word offense, that is a generic, that means apply the generic federal definition. So even though you have those words against a foreign nation, the word offense, particularly when then it's followed by involving, that is the way Congress signals use the federal generic definition. And so for example, the Supreme Court cases and the Ninth Circuit cases we've cited, it may say an offense and then it might say under state law or in violation of state law involving and then plug in your offense, bribery, theft, drug trafficking, whatever it may be. This court and the Supreme Court have repeatedly said in cases like Nardello, Perrin, Shidler, and again, this court's recent decision in Franklin, that that means the generic federal definition. So counsel, do you have a case involving a foreign entity where the generic definition of bribery has been required? Right. The only two cases that this court has considered where it was this particular definition against the bribery under, or the foreign nation clause is Lazarenko and also in the other cases, Zou. And in both of those cases, this court didn't explicitly address the issue, but the way the court treated it. So you're answering my question is no. No. There's no case on point. No, and the government doesn't have a case either. Right. But the cases that are on point though, or most closely on point are the Supreme Court cases that say, and they interpret other statutes that are within Chapter 95 of Title 18. The Shidler, Perrin, Nardello, those are all cases interpreting statutes in the same chapter of Title 18, similar language. And the Supreme Court has always said, use the generic federal definition. And that's what this court has said as well. So what's the language in Lazarenko that you think helps you? What Lazarenko did is, I just want to get the exact language. It looked to both the common law and federal statutes to determine the meaning of extortion. And that was under a foreign extortion allegation. So that's why we think that, I mean, that it's at page 1038 to 1039. I don't have the exact quotation for you, but what the court did is it looked at American common law and it looked at federal statutes to determine the meaning of extortion. And that was under a similar 1956 case that involved a foreign law as a predicate. And then again, in the Zhu case, this court looked to, and I'm quoting, American law in assessing the meaning of fraud in a similar circumstance. And it also said that the defendant's challenge was unsuccessful because, quote, their fraudulent acts are unlawful in both the United States and China, meaning that you needed to have both a generic federal American offense and the foreign offense as well. So the only two cases that this court has decided that, on this particular issue, both seem to suggest that you do need the generic federal offense. And that's consistent with all the other Supreme Court cases and Ninth Circuit cases that say that when this language is used, you use the generic federal offense. But those were not involving foreign countries, correct? Well, there is a Supreme Court case. We cited Esquivel-Quintana v. Sessions, which we cited at page 16 of our brief, that looked at a similar statute, 8 U.S.C. 1101-843. That's the aggravated felony definition. And that includes foreign offenses as well, but the court still held that you use a generic approach. And frankly, the generic approach makes sense when you're dealing with laws of foreign nations because they may be quite different than American law. So if you're going to want to have some type of uniformity and have some type of practicality for district courts in trying to figure out how to instruct juries and what needs to be alleged in the indictment, you would think that you would want to have a generic federal definition under American law apply. How would we deal with the situation if we took that approach and the offense that we defined was not an offense in the country where the defendant committed the activities? How would we address that situation? Well, in that case, if the defendant has either an additional defense under the foreign law or the foreign law is more narrow than the American law, then the defendant does get to present that to come forward to the court and say, listen, we know that the generic definition, that they have to show at least a generic definition, but we have additional defenses under foreign law that we want to raise. And it would be the burden of the defendant to show that actually there are additional defenses under foreign law. So that's the way I think would be the appropriate mechanism. And the cases say that as well, that if the offense under state law or under foreign law is more narrow than the generic federal definition, the defendant is entitled to that additional defense or is entitled to require the government to show the additional elements under the state or foreign law. But at the very least... Do you think that prohibits the government from charging under the foreign law? Do you think the law prohibits the government from charging the crime under the foreign law? It doesn't prohibit the government from charging it. For example, in this case, what the government could have done is they could have charged the Korean bribery as they did, but at the very least, they had to allege the indictment and have the jury instructed on generic federal law, which is what we require. What they weren't allowed to do, which is what they did, is get an indictment under a watered down version of bribery under Korean law and then have the jury instructed under a watered down version of bribery under Korean law. What is the essential difference between Korean bribery and generic American bribery? Well, the way it was alleged and instructed here was the official act requirement was much broader. It didn't comply with McDonald and with 201's definition. Mr. Chi wasn't holding meetings for possible political reasons and he wasn't doing community service and all those things in McDonald were found to be not official acts. So the factual basis of McDonald is quite different from the facts we have in this case. Well, I don't think so because one of the problems we have is that the bribery, and this relates to the last claim, which is a sufficiency of the evidence claim, the bribery that underlines the money laundering specific count of conviction, we have no idea what the official act was. There's no evidence. It involves a payment from this company, Kinometrics. Which Mr. Chi said should be kept quiet. We don't know. That was with respect to another company, this dealings with another company. What we have here is no witness from Kinometrics testified that they had any idea as to what that payment was about. We don't know whether it was a simple phone call, which was what McDonald says is not an official act. He could have picked up the phone and said to, it wasn't even his own entity that allegedly purchased the equipment, which we frankly have no idea what happened, but he could have picked up the phone and spoken to some other entity and said, look, this company makes a great product. That wouldn't be an official act under McDonald. We have no idea what the official act was. And the jury instructions on the official act were totally watered down. In addition, the jury instructions didn't include a corrupt intent requirement, which is required under section 201. The jury instructions didn't include the influence element that is included under section 201. We had a completely watered down definition of bribery that was instructed to the jury. And again, it's our position that the court doesn't even have to get to the jury instructions because the government conceded that the indictment did not allege federal generic bribery. So the indictment itself was deficient, which is a structural error that requires reversal. Did you want to save any time? Yes, I did. Thank you, counsel. Good morning. May it please the court. John Alex Romano on behalf of the United States, the district court correctly denied defendant. She's request for a jury instruction on section 201B bribery. Before we get to the jury instruction, what's your response to opposing counsel's position that the indictment was required to plead generic bribery? I mean, generic bribery. Disagree with that argument completely, Your Honor. Even if the defendant appellant is correct as to his section 201B argument, this court clearly held in Lazarenko that a money laundering count in an indictment does not have to charge the elements of the underlying predicate offense. That's clear in Lazarenko. In fact, the money laundering indictment in Lazarenko was less specific as to the money laundering counts in this case, which in this case identified the foreign law that was charged as a foreign bribery predicate and even quoted Article 129 of South Korea's criminal code separately. But the main point is that under Lazarenko, an indictment for a money laundering count does not have to charge the underlying elements of the predicate offense. Could you tell me the language in Lazarenko that you're relying upon to support your argument? As to the indictment, Your Honor, or more broadly as to the question? The premise that you just said. In a money laundering indictment, there is no need to allege the underlying elements of the predicate offense. In Lazarenko, the underlying claim was extortion. Correct, under Ukrainian law. And I'm referring to, this would be at pages 10,033 to 10,034 of Lazarenko, which discusses the sufficiency of the indictment on the money laundering count. And it says, we have previously held. Oh, I see. For example, when bringing charges of money laundering, the government need not allege all the elements of the specified unlawful activity, i.e. the underlying offense. That's correct, Your Honor. And what's key about Lazarenko is we actually do think it is much more on point than my opponent argued. Because in Lazarenko, the jury was instructed on the elements of extortion under Ukrainian law. And this court separately looked at the common law definition of extortion to determine whether, as a legal matter, that the Ukrainian extortion offense that was charged as a predicate matched the common law definition of extortion. And now it is true. I think there is a footnote in Lazarenko where the court notes that. I mean, it also looks at the Hobbs Act definition of extortion and notes that it's the same as the common law definition of extortion. But in the main, the analysis that you do, that a court does in Lazarenko when you have a foreign offense that is charged as a predicate in a money laundering count, is you look at the common law definition of the term to determine whether, as a legal matter, the foreign predicate that's charged is the type of predicate that Congress wanted to capture under the money laundering statute. And that really flows foremost, I think, from the plain language of the statute. Pardon me. If the violation of the foreign statute is sufficient to make an adequate indictment, why does the court go on to compare it to common law extortion? Because that is the analysis that is done in Lazarenko. Just you want to make sure that the within what Congress was trying to capture as a foreign law predicate. Because if Congress is trying to capture foreign law as a basis of indictment, what the common law definition of extortion is, is irrelevant. Well, you just want to make sure, for example... I mean, is it your position that Congress was attempting to capture common law extortion in Lazarenko? Because... That is what the court did in Lazarenko, though, Your Honor. It looked to whether or not, in response to the argument that the defendant in Lazarenko made, that the Ukrainian extortion offense that was charged as a predicate was not a valid predicate under this money laundering provision. The court in Lazarenko said, no, we think that this type of foreign extortion offense that was charged here was exactly the type of offense that Congress wanted to capture when it added the foreign offense relating to extortion here. And I think part of it also flows from the legislative history. If the court were to look at the legislative history of the provision that adds a foreign bribery offense to the money laundering statute, it's added as part of the 2001 Patriot Act. Is legislative history the basis of your claim? No, Your Honor. We're proceeding foremost on the plain language of the statute. When you have a offense against a foreign nation, it refers to a particular violation of foreign law, just as statutes use an analogous term, offense against the United States. When statutes use that term, it's referring to a particular violation of federal law. So, for example, the conspiracy statute punishes anyone who conspires to commit an offense against the United States. When the government charges a 371 conspiracy, it has to show an agreement to violate a particular federal law, not an agreement to violate a federal generic offense. So we think we're relying foremost on the plain language of the statute, which uses the term offense against a foreign nation. Your position here is that so long as Korean bribery fits within common law bribery, then Lazarenko is Ninth Circuit precedent for approving the indictment. That's correct, Your Honor. And there's another component to our plain language argument, because there's another statutory clue, which actually shows quite clearly that if Congress had wanted to engraft the requirements of Section 201B bribery onto this foreign bribery provision, it would have said so. Because in listing out the other foreign predicates in 1956 C7B, Congress in particular, with respect to particular foreign offenses, but not bribery, Congress referenced other federal statutes. So for example, enlisting foreign drug trafficking, there's a cross-reference to the definition of a controlled substance under the Controlled Substantive Act. Enlisting a foreign crime of violence, there's a cross-reference to the definition of a crime of violence in 18 U.S.C. Section 16. And there are other examples in there. So we know that Congress knew and knows how to cross-reference another federal statute when it wants to apply it to these foreign offense predicates that it's listing out. And the fact that it did so in some places, but not with respect to the foreign bribery provision, we think is quite telling that Congress did not intend to graft the requirements of Section 201B on this provision. And I'd like to turn to, I've already discussed Lazarenko, but the mode of analysis in Lazarenko, where you sort of look to the common law to make sure that the foreign offense that's That mode of analysis is what the Supreme Court employed in the cases relied upon by Defendant Chee, Nardello, Perrin, Shiedler, the cases that arise under the Travel Act and RICO. Now in those cases, the Supreme Court looked at the generic definition of an offense to see if the state law predicates that were charged in the Travel Act and RICO were the type that Congress wanted to capture in those federal statutes. But the mode of analysis is the same, and I would submit, because I'd like to turn to focus on the language of the quid pro quo instruction that was given in this case, I don't think there's really a difference between common law bribery and generic bribery, and I'll also address 201 bribery, but there's really not much of a difference. The district court's instruction on quid pro quo bribery under the South Korean law required the jury to in order to convict Defendant Chee, in order to find that he had committed bribery, that defendant received, demanded, or promised to accept a payment in exchange for exercising his official duties, or in other words, as a quid pro quo for exercising his official duties. The exchange of money for official action is quintessential bribery under the common law. We've cited just by way of an example to the Clark case out of the Eighth Circuit, which says that common law bribery is a payment given in of governmental power. We cited in a recent 28-J letter to this court the model penal code definition of public official bribery, which refers to the payment of something as consideration for, that it lists out certain, you know, official acts, that as consideration for language is really very similar to the in exchange for language, and I would even note as to How about addressing official duties versus the McDonnell? Yes, Your Honor. I don't think McDonnell applied, and if I could just briefly note a threshold question before answering your question. We submit that the challenge to the instructions on official duties is not preserved. Nowhere in my review of the record that I find anywhere where Defendant Chee challenged or raised McDonnell in connection with the jury instructions on official duties. There was an issue that the defense raised as to the definition of official resolved in the defendant's favor, but nowhere in the record, and Mr. Coleman can on rebuttal correct me if I'm wrong, but nowhere in the record did I find where the defendant raised to the district court a complaint over the fact that official duties would include acts that are customarily performed by the official, nor did I find where he referenced McDonnell. Even if we're wrong about that and the court were to find that the challenge to official duties is McDonnell does not apply. McDonnell is a case, first and foremost, of statutory construction. Various courts of appeals have declined, for example, to apply McDonnell to other domestic bribery statutes. The Third Circuit in Ferriero declined to apply McDonnell to New Jersey's bribery statute. The Second Circuit in the Boyland case declined to apply McDonnell to and the reason they did so is because they see that McDonnell, the Supreme Court, is really focusing in on the terminology, the language of what constitutes an official act under Section 201 A3, and none of the court's discussion of some constitutional concerns it had with an overbroad definition of official act in McDonnell, none of those constitutional concerns have any footing in the circumstances of this case. As Judge Bea, as I think some of your questioning got at, this is not the type of relationship here between the public official was not one with his or her constituents. This is Defendant Chee's relationship with two foreign bribery, sorry, two foreign companies that were trying to bribe Defendant Chee for an unfair business advantage in South Korea. So there's no danger of interfering with constituent relationships. There's no vagueness concerns given the strength of the quid pro quo instruction and given the separate instruction given to the jury that it had to find that Defendant Chee knew that the property he was in transacting with was derived from some criminal offense. That mens rea requirement in addition to the strength of the quid pro quo instruction really would satisfy any vagueness concerns and of course there's no federalism concern because you're giving an instruction which the district court did, giving instruction on official duties that Hughes tracks the requirements of South Korean law, really how South Korea, the South Korean Supreme Court defines official duty. So by giving that definition you're respecting the law of a separate sovereign. So for all of those reasons the challenge to the instruction on prepared to spend my remaining two minutes on sufficiency unless this court has any other questions about the indictment or the jury instructions. The evidence on count six was sufficient to support Defendant Chee's conviction. Count six, as the court knows, the basis of that was a $56,000 check that Defendant Chee writes from his Bank of America account in Glendale, California and has deposited in his Merrill Lynch account in New York. And it's undisputed that at least $35,000 of the funds used to cover that $56,000 check came from two deposits that Kinemetrix made into Defendant Chee's Bank of America account. I'm sorry, that at least $35,000 was traced to two wires that Kinemetrix sends in to Defendant Chee's bank account. The evidence was sufficient to allow the jury to conclude that in exchange for those wires, which are tied to three sales that Kinemetrix makes to KGM and to KMA, the Korean Meteorological Association, the payments that Kinemetrix sends to Defendant Chee are tied to three sales. The evidence was sufficient to allow the jury to infer that in exchange for exercising his official duties to promote Kinemetrix products, Kinemetrix paid him that money. The court can look to all the evidence showing that Defendant Chee was out there promoting sales of Kinemetrix equipment. The court could also look at the evidence showing that when Defendant Chee was a senior researcher at KGM, and sometimes he was the director of the Earthquake Research Center, and he was certainly in a position to influence purchasing decisions by KGM, his employer, and other end users. Of course, you have all the evidence of acts of concealment he takes to conceal his relationship with Kinemetrix, and the fact that he's directing that money be sent not to his bank account in South Korea, but to a bank account in the United States. All right. Thank you, counsel. I'm going to try to address a few points. First, on the indictment question, the government keeps on twisting the argument. They say that the indictment doesn't have to allege all the elements of the underlying unlawful activity. I agree with that, and that's not the argument that I'm making. The argument is that it has to allege a valid specified unlawful activity. For example, if the unlawful activity alleged was jaywalking for a money laundering, the indictment has to be dismissed because jaywalking is not a specified unlawful activity. The argument is not you would have to allege all the elements of jaywalking. The argument is they have to allege a valid specified unlawful activity. They keep on Lazzarenco and twisting the argument that's being made. A few other points. If I understand the government's position now, it's that what the statute means is common law bribery. I think that's what their argument is, if I'm understanding it. First of all, that's wrong because what this court and the Supreme Court have consistently said, it's generic federal bribery, and that you even if you want to take the government's position that it's common law bribery, I'm not sure how they can say McDonald's is not part of the American common law. This is the binding, guiding Supreme Court decision, the most important Supreme Court decision on bribery in decades. So how they can say that McDonald's does not constitute part of the American common law bribery, I don't understand how they can make that argument. The government said that... Mr. Chief. Well, no two, I mean, the cases may be different. The facts may be different of the case. But the legal question is, what does bribery mean? And it means it does not mean the type of official accident McDonald did, which were normal and common political favors. Those purchasing and receiving money. Well, I guess it was the exact same thing, Your Honor. Governor McDonald was, there was a businessman who wanted research to be done by the state, by the government. And he was giving favors to McDonald and his wife for the governor to make a phone call or to pass along a note or to say, we'd like you to take a look at this. It's the same thing here. They're claiming what these companies wanted business and that Mr. Chi, Dr. Chi made a phone call, presumably to say, hey, look, these guys have, you should take a look at their stuff. It's the exact same type of official acts that they're contending. And that's the problem. The official act definition was incorrect. The government said the defense never asked for the McDonald official act. That's just wrong. I can give you ER 115 is where the defense specifically asked for the 201 definition of official act, which is what a McDonald says applies. And the defense did also, can I finish my question? Yes. Was a reference to McDonald made in the context of requesting that instruction? I don't have the McDonald site here, but I will get it. I have a distinct recollection of the defense making a McDonald argument in their pleadings. The page 115 that I'm giving you is just a request for the 201 official act instruction, but I will get the court. The defense made this argument. And therefore, even if you want to say common law bribery is the standard, which it isn't McDonald as part of the common law, the American common law at this point. And for that reason, the, both the indictment and the jury instructions were defective. All right. Thank you counsel. Thank you to both counsel. The case just argued is for decision by the court.
judges: Rawlinson, Bea, Settle